## THE MENOMINEE.

(District Court, E. D. Pennsylvania.   June 30, 1911.)

### No. 54.

COLLISION (§ 94*)—OVERTAKING VESSELS—FAULT OF OVERTAKEN VESSEL.

   A collision occurred on the Delaware river in the daytime between the steamships Caprivi and Menominee, both passing up. The Caprivi was in the lead and about on the range, when the Menominee, which was the larger and faster vessel, then about 1,000 feet behind and on a parallel course 300 feet east of the range, signaled her intention to pass to the starboard of the Caprivi, which was at once assented to. A short distance above where the collision occurred it was necessary to change to the starboard 1½ points to a new range, and it appeared from the evidence that the Caprivi made the turn too soon, crowding the Menominee to the edge of the channel, where the collision occurred, though she made all efforts to prevent it. *Held*, that it was due solely to such fault of the Caprivi; the passing by an overtaking vessel at that point being a proper maneuver, and which should have been executed without danger.

   [Ed. Note.—For other cases, see Collision. Cent. Dig. §§ 197–199; Dec. Dig. § 94.*

   Collision with overtaking vessels, see note to The Rebecca, 60 C. C. A. 254.]

In Admiralty.   Suit for collision by Anders Holtung, master of the steamship Caprivi against the steamship Menominee.   Decree for respondent.

Henry R. Edmunds, for libelant.
H. Alan Dawson, for respondent.

J. B. McPHERSON, District Judge.   About 9 o'clock in the morning of March 18, 1907, a collision occurred in the river Delaware, not far above Wilmington creek, between the British steamship Menominee and the Norwegian steamship Caprivi, both on the way up the river to Philadelphia.   The tide was about the last of the ebb, the day was fair, the wind was too light to be a factor, and no other vessel was near.   The place of the collision was near the red spar buoy—then No. 28, now S 2 B—that marks the eastern edge of the channel, and is about 300 feet east of the Cherry Island range.   The buoy is at the turn from this range to the Bellevue range, the necessary change of course being to eastward, or starboard, about a point and a half.   Both vessels were proceeding on the same course, and the collision occurred while the Menominee was trying to pass the Caprivi. On both ranges the channel is near the western, or Delaware, shore. Below the buoy the width is 600 feet, perhaps a little more, and above

the buoy it is at least 1,000 feet, the depth at low tide being 30 feet. A vessel about to round the buoy should not pass close to it, but should continue upon the Cherry Island range for some distance above the buoy before making the turn. This is the proper course, and there are space and depth enough to make it safe. In March, 1907, the Bellevue range was marked only by buoys.

The Menominee is 475 feet long, 52 feet 3 inches beam, of 4,441 tons net register, and was drawing about 22 feet 6 inches aft and about 15 feet 6 inches forward. On her bridge were a licensed and competent pilot, her master, the senior second officer, the third officer and a quartermaster at the wheel. A lookout was in the crow's nest on the foremast forward of the bridge. The Caprivi is 315 feet long, 40 feet 6 inches beam, of about 1,800 tons net register, and was drawing 23 feet 3 inches. Her bridge was occupied by a licensed and competent pilot, and by her chief officer and the man at the wheel. Her master was aft in his cabin until a few minutes before the collision. At that time he came out upon the poop and afterwards went upon the bridge. Before the attempt to pass, both vessels were practically on the Cherry Island range. The Menominee was the faster boat, and was coming at the rate of 10 to 12 miles an hour through the water, while the speed of the Caprivi was not more than 8 or 8½ miles. There is some dispute whether more than one passing signal was given. I do not regard the fact as vitally important, but I believe it to be true that the Menominee gave two signals; the first, when she was about a mile astern, and the second, when she was about 1,000 feet astern. I do not believe the first signal was heard, or (if heard) was understood or replied to, by the Caprivi; but the dispute I think is not important, for undoubtedly the second signal was heard and assented to, and there were then time and room enough to permit the maneuver to be executed in safety. On both occasions the Menominee blew a single blast—indicating the intention to pass to starboard— and to the second blast the Caprivi promptly agreed. But, after the Menominee had given the first signal—whether it was heard, or not— she altered her course immediately, putting her helm to port and moving over to the starboard or eastern edge of the channel. Shortly afterward and as a result of this change, she and the Caprivi were on parallel courses, the Caprivi being a little to the westward of the Cherry Island range, and the Menominee being of course still astern, but probably 300 feet to starboard, or eastward. At all events, she was well over to the eastern edge of the channel. If the Caprivi had heard the signal and had desired to change her position, she could easily have gone at least 100 feet further to port in the channel, but, as already stated, she either did not hear or did not understand the signal, and in any event she cannot be blamed for observing the rules and keeping her course at this time. Upon these parallel courses the Menominee overhauled the Caprivi, until the former was about 1,000 feet astern of the latter, when the second signal was given and answered. This is the critical moment to which attention is particularly to be directed. As I read the testimony, there was no reason then to anticipate any danger in passing. It was only neces-

sary that each vessel should hold its course, for it is clear, I think, that each had room enough and depth enough to hold it and to make the turn around the buoy in·safety. But the Caprivi did not continue to hold her course as she was bound to do. For some reason that is not satisfactorily explained, she began to swing to starboard, and, although the Menominee promptly took every measure that was then possible, putting her helm hard-a-port and her engines full speed astern, the collision could not be avoided. Under her port helm the Menominee reached the verge of navigable water, and could go no further to starboard. Her way was measurably stopped, but she was still moving ahead under momentum when the vessels came together, and the bluff of her port bow came into contact with the starboard quarter of the Caprivi, about 50 feet from the stern, and scraped the Caprivi's side about as far as the bridge, thus doing the damage complained of. The blow was glancing, and the Menominee suffered no damage. No assistance was needed by the Caprivi, and both vessels proceeded to Philadelphia without delay.

The fault charged against the Menominee is that she tried to pass too close, and that·the vessels were drawn together by suction. In my opinion the evidence does not support this contention. On the contrary, I agree with the Menominee's argument that the collision was due solely to the Caprivi's change of course, which crowded the Menominee out of the channel, and brought the accident about. Shortly before the collision the vessels were on parallel courses about 300 feet apart. This is ample space for the customary·maneuver between such vessels at this or any similar point in the river, and the channel here easily allows this space to be maintained. As it seems to me, the probable cause of the collision was the Caprivi's hasty desire to turn buoy 28 in order to get upon the range immediately above. This explains adequately what happened, and no other theory is in accord with the decided weight of the evidence. It is much to be regretted that the man who was steering the Caprivi was not produced. I do not suggest that the libelant is at fault in not calling him. I accept the reason that is offered for his absence; but no one can read the testimony without feeling that a gap now exists that he might perhaps have been able to close. If he made a mistake, either in understanding or in carrying out his orders, much would be clear that is now perhaps in some doubt; and it is impossible to deny that his absence lends some weight to the inference that he himself may have been at fault. But, leaving the helmsman out of view, it is I think proved beyond reasonable question that the collision took place near the buoy, but south of it; and (whatever the cause may have been) the Caprivi had no business to be on the eastern edge of the channel at this time. Her place then was at least on the range, 300 feet to the westward, and, if she had been there, the collision would have been impossible. Her fault is primary and sufficiently accounts for the disaster. I am unable to discover any contributory fault on the part of the respondent.

No legal question seems to be involved. The inland rules are clear. It was lawful to pass at this point. The Menominee had the burden

of the maneuver and was bound to keep out of the Caprivi's way; but the Caprivi was equally bound to obey the rules and hold her course. Having failed to hold it, she lost her privileged position and became the wrongdoer.

A decree may be entered dismissing the libel, with costs.